[No. B236373. Second Dist., Div. Seven. Dec. 17, 2012.]

CAROLINA CASUALTY INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. L.M. ROSS LAW GROUP, LLP, et al., Defendants, Cross-complainants and Appellants.

1182

Counsel

L.M. Ross, Leonard M. Ross; SulmeyerKupetz, Dean G. Rallis, Jr., and Daniel A. Lev for Defendants, Cross-complainants and Appellants.

Wootton Law Group and Chad B. Wootton for Plaintiff, Cross-defendant and Respondent.

## Opinion

**PERLUSS, P. J.**—The chapter 11 trustee for Leonard M. Ross and The Leonard M. Ross Revocable Trust (U/D/T 12-20-85) (Trustee) appeals from an amended judgment in favor of Carolina Casualty Insurance Company (Carolina Casualty) entered after the trial court granted in part a motion to amend the original judgment against L.M. Ross Law Group, LLP (Ross Law Group), to include Ross individually as a judgment debtor. (The court denied the motion to the extent it sought also to add The Leonard M. Ross Revocable Trust and the L.M. Ross Professional Law Corporation as judgment debtors.) The Trustee contends the trial court lacked any factual or legal basis to make Ross personally responsible for the judgment against Ross Law Group and prejudicially erred in denying his request to conduct discovery in connection with the motion to amend the judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Original Judgment Against Ross Law Group*

   a. *The DEC malpractice claim*

The factual and procedural context for Carolina Casualty's motion to amend the judgment is described at length in our published decision affirming the original judgment, *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2010) 184 Cal.App.4th 196 [108 Cal.Rptr.3d 701] (*Ross I*). In brief, Carolina Casualty issued a Lawyers' Professional Liability Policy to Ross Law Group for the policy period September 24, 2004 to September 24, 2005. Although generally a claims-made policy, the policy expressly provided, if Ross Law Group became aware of a potential claim and provided written notice of the facts and circumstances relating to it prior to the expiration of the policy, then any claim subsequently made arising out of those facts would be deemed to have been made when notice was first given to the insurer. Exclusion F of the policy provided Carolina Casualty would not be obligated to pay any damages or claims expenses in connection with a claim by any business enterprise other than Ross Law Group in which the insured (defined

as Ross Law Group, as well as any partner or employee of Ross Law Group acting within the scope of his or her duties) owned more than a 10 percent interest, or in which any insured "is an owner, partner, or employee, or which is directly or indirectly controlled, operated, or managed" by any insured. (*Id.* at pp. 198–199.)

On September 20, 2005, four days prior to the expiration of its legal malpractice policy, Ross Law Group reported its client Diversified Entertainment Co. (DEC) had a potential legal malpractice claim against it arising from a dispute between DEC and Starlight Home Entertainment, Inc. On December 7, 2007 DEC filed a complaint for legal malpractice against Ross Law Group in Los Angeles Superior Court alleging in connection with an October 2004 transaction the law firm had improperly advised DEC it had the right to authorize Starlight to produce, market and distribute a program entitled "Live! From Las Vegas"; in June 2005 Starlight was enjoined from distributing the program; and Starlight thereafter sought to recoup the damages it had suffered as a result of the injunction by offsetting payments otherwise due from Starlight to DEC. DEC alleged it suffered damages in excess of $800,000 as a result of Ross Law Group's negligence. (*Ross I, supra*, 184 Cal.App.4th at p. 199.)

Ross Law Group tendered the action to Carolina Casualty, which agreed to defend Ross Law Group under a reservation of rights. In June 2008, following a mediation, the legal malpractice action was settled by a total payment of $250,000 to DEC. Carolina Casualty contributed $175,000 to the settlement; Ross Law Group contributed $75,000. As part of their agreement Carolina Casualty and Ross Law Group each reserved its right to recover the amount it had paid from the other party; Ross Law Group waived its right to sue Carolina Casualty for bad faith or breach of the implied covenant of good faith and fair dealing; and Carolina Casualty waived any right it may have to recover the defense costs it had incurred in the DEC action. (*Ross I, supra*, 184 Cal.App.4th at p. 200.)

### b. *Settlement of the DEC claim and the declaratory relief action*

In May 2008, approximately one month before the settlement of the DEC action, Carolina Casualty filed this coverage action for declaratory relief and reimbursement in Los Angeles Superior Court. Carolina Casualty alleged DEC and its predecessor-in-interest, DMI Entertainment Co., LLC (DMI), were owned and managed or controlled by Ross, who also owned and managed Ross Law Group, and asserted no coverage was available for DEC's claim of legal malpractice against Ross Law Group " 'given the obvious potential for collusion in connection with such claims.' " (*Ross I, supra*, 184 Cal.App.4th at p. 200.)

Following the DEC settlement and pursuant to its agreement regarding the scope of the remaining dispute between it and Carolina Casualty, Ross Law Group filed a cross-complaint in this action seeking reimbursement of the $75,000 it had contributed toward the settlement. Ross Law Group and Carolina Casualty stipulated Carolina Casualty did not need to file an amended complaint specifically alleging its entitlement to reimbursement of its $175,000 settlement payment; they agreed, if Carolina Casualty prevailed on its motion for summary judgment and established it had no duty to indemnify Ross Law Group in the DEC action, it would be entitled to a judgment in the amount of $175,000 plus interest. (*Ross I, supra*, 184 Cal.App.4th at pp. 200–201.)

### c. *The trial court's order granting summary judgment*

In December 2008 Carolina Casualty and Ross Law Group filed cross-motions for summary judgment and, in addition to the separate statements of undisputed material facts and other papers each party filed in support of its motion, jointly filed a stipulation of facts and authenticity of documents. In support of its argument Exclusion F precluded coverage because of Ross's dual role in DEC and Ross Law Group, Carolina Casualty presented evidence that the legal services by the Ross Law Group in connection with the October 2004 Starlight transaction had actually been provided to DMI, DEC's predecessor, and that Ross had identified himself as the chief executive officer of DMI and its predecessor Rossco Entertainment Co. "during the period 2000 through the present" in a May 10, 2005 declaration filed on behalf of Starlight in its litigation over the right to distribute "Live! From Las Vegas." Ross had also signed the Limited Liability Company Certificate of Amendment, dated March 29, 2005, changing the name of the company from DMI to DEC, as DEC's "manager." Carolina Casualty also presented evidence The Leonard M. Ross Revocable Trust, of which Ross is both the settlor and trustee, owned a majority interest in DMI/DEC at all relevant times. (*Ross I, supra*, 184 Cal.App.4th at p. 201.)

For its part Ross Law Group asserted Ross's role in DEC and its predecessors changed throughout time and insisted Ross was neither an owner nor a manager of the entity when the alleged legal malpractice was committed in October 2004 or when the malpractice claim was actually made in 2007. Although Ross conceded he had signed the October 2004 distribution agreement, which was at the center of the legal malpractice claim, as a "member" of DEC, Ross claimed that was " 'incorrect because it was a mistake not to list me as signing as the Trustee of the [Leonard M.] Ross [Revocable] Trust.' " (*Ross I, supra*, 184 Cal.App.4th at pp. 201–202.)

After receiving opposition and reply memoranda, hearing oral argument and considering evidentiary objections filed by both parties, on January 23,

2009 the trial court granted Carolina Casualty's motion and denied Ross Law Group's motion, finding Ross had acted simultaneously as both the lawyer to DMI/DEC and its owner/manager: " 'The malpractice claim in the underlying [DEC] action arose from Ross's actions in connection with a business enterprise other than the Ross Law Group in which Ross was an owner of an interest larger than 10 percent and in which Ross indirectly or directly managed the entity.' " The court further ruled the fact it was The Leonard M. Ross Revocable Trust, of which Ross was both the settlor and the trustee, rather than Ross personally, that owned an interest in DEC " 'is a technicality that is immaterial to the instant dispute. There is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor.' " (*Ross I, supra*, 184 Cal.App.4th at pp. 202–203.) "The court entered judgment in favor of Carolina Casualty on March 2, 2009." (*Id.* at p. 203.)

d. *This court's decision in* Ross I

We affirmed the judgment on appeal, explaining it was undisputed Ross, an insured under the malpractice policy, was manager of DEC in September 2005 when DEC's potential malpractice claim was reported by the law firm to Carolina Casualty and holding the DEC claim was made for purposes of coverage at that time. It was simply immaterial whether Ross continued in his role as manager when the actual malpractice action was filed: "Nothing justifies interpreting the language in exclusion F insofar as it related to an insured's status at the time a claim is made in a manner that is inconsistent with the coverage and notice provisions of the policy." (*Ross I, supra*, 184 Cal.App.4th at pp. 206–207.)

We also affirmed the trial court's order granting summary judgment on the alternate ground exclusion F precluded coverage because an insured (Ross) owned more than a 10 percent interest in DEC, the entity that had made the malpractice claim against Ross Law Group. It was undisputed a majority interest in DEC had been held at all relevant times by The Leonard M. Ross Revocable Trust, of which Ross was both the settlor and trustee. We explained, "[A]t least for most purposes '[t]here is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor.' 'Under California law, a revocable inter vivos trust is recognized as simply "a probate avoidance device . . . ." . . . Property transferred to, or held in, a revocable inter vivos trust is nonetheless deemed the property of the settlor . . . .' " (*Ross I, supra*, 184 Cal.App.4th at p. 208.)

## 2. *The Motions to Amend the Judgment*

According to a declaration filed in the trial court by counsel for Carolina Casualty, after the judgment was affirmed in April 2010, Ross Law Group refused to satisfy the judgment, asserting it had ceased operations in September 2006 (that is, nearly two years before it entered into the settlement agreements with DEC and Carolina Casualty) and had no assets. As a result, on July 27, 2010 Carolina Casualty moved to amend the judgment to include and insert Ross, The Leonard M. Ross Revocable Trust and The L.M. Ross Professional Law Corporation as the correct names of the real defendants and real parties in interest. The hearing on the motion was scheduled for August 23, 2010, but was continued to September 16, 2010 at the request of Ross's counsel. On the afternoon of September 15, 2010 Ross filed a voluntary petition for relief under title 11 of the United States Code in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

No formal notice of Ross's bankruptcy petition was provided to the trial court prior to the 8:30 a.m. hearing on Carolina Casualty's motion to amend the judgment. However, Ross's counsel telephoned Carolina Casualty's counsel shortly before the hearing to report the filing, and counsel informed the court what he had been told. The trial judge indicated a similar telephone call had been made to the court.

In the absence of formal notice, the court elected to proceed with the hearing subject to vacating any ruling it made if a petition had, in fact, been filed and a stay of the state court action was in place. The court then conditionally granted Carolina Casualty's motion in part, ruling the judgment should be amended to add Ross and the trust as judgment debtors. Later that same day, Ross filed a notice of stay of proceedings, showing that a bankruptcy petition had been filed on September 15, 2010 on behalf of Ross and the trust. The court vacated its order amending the judgment.

Following proceedings in the bankruptcy court, that court granted Carolina Casualty relief from the automatic stay in order to pursue its motion to amend the judgment. On May 5, 2011 Carolina Casualty filed a renewed motion to amend the judgment by adding the same three parties, together with a substantial volume of supporting documents. After reviewing opposition and reply briefing and evidentiary objections by both parties and hearing oral argument, on June 2, 2011 the court granted the motion in part, adding Ross to the judgment; the request to add the trust and L.M. Ross Professional Law Corporation to the judgment was denied.

The court found, based on the evidence submitted in connection with the hearing on Carolina Casualty's motion, that Ross, as an individual, had

actively participated in and controlled the litigation between Carolina Casualty and Ross Law Group and ruled amending the judgment to add Ross "is equitably justified, as it seems apparent that this [substitution] would effectively be an amendment to specify the 'true identity' of the culpable party—in terms of Ross's clear role in the underlying dispute regarding coverage, Ross's role in directing the instant litigation, and Ross's permitting suit to advance against a non-entity with no funds, and even encouraging the dispositive cross-motions for summary judgment." Although it denied Carolina Casualty's motion to add The Leonard M. Ross Revocable Trust to the judgment, the court observed in its ruling that the trust's assets should be reachable by Carolina Casualty as a judgment creditor if Ross is a judgment debtor.

An amended judgment in favor of Carolina Casualty was filed on August 8, 2011. On August 26, 2011 a revised amended judgment specifying the amount of prejudgment interest due Carolina Casualty was entered. Although Ross appeared for himself and on behalf of The Leonard M. Ross Revocable Trust throughout the postjudgment proceedings (including at the hearing held on June 2, 2011),[1] it is the Trustee and the trust who has appealed from the amended judgment and the revised amended judgment in favor of Carolina Casualty.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

██ Under Code of Civil Procedure section 187 (section 187) the trial court is authorized to amend a judgment to add additional judgment debtors. (*Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1554 [49 Cal.Rptr.2d 286].)[2] " 'As a general rule, "a court may amend its judgment at any time so that the judgment will properly designate the real defendants." . . . Judgments may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor . . . . "Amendment of a judgment to add an alter ego 'is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant.' " ' " (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508 [121 Cal.Rptr.3d 118].) In addition, even if all the

---

[1] L.M. Ross Professional Law Corporation appeared on behalf of itself through Ross.

[2] Section 187 provides, "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if "the equities overwhelmingly favor" the amendment and it is necessary to prevent an injustice. (*Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 20–23 [28 Cal.Rptr.2d 127] (*Carr*).)[3]

The trial court's decision to amend a judgment to add a judgment debtor is reviewed for an abuse of discretion. (See *Greenspan v. LADT LLC, supra,* 191 Cal.App.4th at p. 508 [decision to amend judgment lies in sound discretion of trial court]; *Carr, supra,* 23 Cal.App.4th at p. 20 [same]; see also *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073 [130 Cal.Rptr.3d 123] ["[i]n order to see that justice is done, great liberality is encouraged in the allowance of amendments brought pursuant to Code of Civil Procedure section 187"].) Factual findings necessary to the court's decision are reviewed to determine whether they are supported by substantial evidence. (*NEC Electronics, Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 777 [256 Cal.Rptr. 441]; *Wollersheim v. Church of Scientology* (1999) 69 Cal.App.4th 1012, 1014–1015 [81 Cal.Rptr.2d 896].)[4]

> 2. *The Trial Court's Finding Ross Law Group Dissolved and Ceased to Operate as a Registered Limited Liability Partnership in September 2006 Is Supported by Substantial Evidence*

Central to the decision to amend the judgment to add Ross as a judgment debtor and the principal point of attack by the Trustee on appeal is the trial court's finding that Ross Law Group dissolved and ceased to operate as a limited liability partnership in September 2006—well before DEC filed its malpractice complaint; Ross on behalf of Ross Law Group entered into the settlement agreement with Carolina Casualty; and the cross-motions for summary judgment in this action were determined. That finding is supported by overwhelming evidence.

In his July 26, 2010 declaration in support of the original motion to amend the judgment, Chad B. Wootton, counsel for Carolina Casualty, explained the

---

[3] In his reply brief on behalf of Ross, the Trustee "concedes that Code of Civil Procedure section 187 allows for amendments to judgments, even without an alter ego shown, in the interest of justice," citing *Carr, supra,* 23 Cal.App.4th 14. The Trustee argues *Carr* is distinguishable because there was no evidence here of active efforts by Ross to mislead the court. We address that argument in part 3., below.

[4] " 'Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible, and of solid value.' " (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356].) In making that determination, we must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Valiyee v. Department of Motor Vehicles* (1999) 74 Cal.App.4th 1026, 1031 [88 Cal.Rptr.2d 508]; *Kazensky,* at p. 52.)

reason Carolina Casualty was moving to add Ross and other parties as judgment debtors: "[Carolina Casualty] is requesting the amendment to the judgment because Ross Law Group—after fully participating in this action, stipulating during the course of the action that it would pay [Carolina Casualty] $175,000 if [Carolina Casualty] were to prevail herein, making a $75,000 payment to another party (through the Ross Revocable Trust) while this action was pending, participating in mediations and making settlement offers to [Carolina Casualty], and appealing the judgment in [Carolina Casualty's] favor—has now taken the position that it was dissolved prior to the filing of this action, has no assets and will not pay a single dime to [Carolina Casualty]."

In his declaration in opposition to Carolina Casualty's motion filed September 2, 2010, Ross did not dispute Wootton's statement and, in fact, confirmed Ross Law Group had dissolved on September 28, 2006: "In September, of 2006, it became clear that the firm could not continue to function as a going concern, and on September 28, 2006, was dissolved." Ross attached to his declaration what he described as "a true and correct copy of the Limited Liability Partnership Notice of Chance [sic] of Status for the Law Group, indicating the partnership ceased to exist on September 28, 2006." The attached exhibit is a form filed with the California Secretary of State, signed by Ross as an "authorized partner," for "L.M. Ross Law Group, LLP" stating "[t]he registered limited liability partnership ceases to be a registered limited liability partnership and is hereby filing this notice with the California Secretary of State that [it] is no longer a registered limited partnership." In his declaration Ross also stated he had disclosed to Carolina Casualty during negotiations leading to the mediated settlement of the DEC litigation "it was unclear how long [Ross] Law Group would remain solvent."

In his May 5, 2011 declaration in support of Carolina Casualty's renewed motion to amend the judgment following the order granting it relief from the automatic stay, Wootton again stated Ross Law Group had refused to satisfy the judgment on the basis it had dissolved in September 2006 and had no assets. Wootton attached to this declaration a series of e-mail exchanges with counsel for Ross Law Group that included the statement "[y]our judgment is against a party with no assets . . . ." He also attached a copy of Ross's declaration in opposition to the original motion acknowledging the September 28, 2006 dissolution of the partnership, as well as a copy of the notice of change of status filed with the Secretary of State, which Ross had previously provided to the court. Wootton denied Ross, Ross Law Group or its counsel had disclosed during the settlement proceedings leading to resolution of the DEC litigation that Ross Law Group had been dissolved or had no assets.

In a declaration in support of Carolina Casualty's reply memorandum, Wootton also attached a copy of a declaration filed by Ross on February 25,

2011 in the pending bankruptcy case in which Ross stated under penalty of perjury, ". . . at the time of the litigation in the instant matter, [Ross Law Group] was no longer a functioning entity, and had been dissolved, several years earlier." In a subsequent paragraph in the same bankruptcy court declaration, Ross stated, "In September, 2006, it became clear that the firm [Ross Law Group] could not continue to function as a going concern, and was dissolved."

Notwithstanding his prior sworn statements, in his declaration in opposition to the renewed motion to amend the judgment, Ross now insisted he was "under the mistaken understanding" Ross Law Group had been dissolved in September 2006. In fact, he asserted, it was another legal entity, L.R. Ross & A.S. Bram LLP that was dissolved on that date; and Ross Law Group still existed and was registered as active with the California Secretary of State. Ross provided several documents with his declaration that he claimed explained the error and his "apparent confusion."

Carolina Casualty objected to this evidence—both Ross's statements that contradicted his prior declarations under penalty of perjury and the exhibits purporting to show the status of Ross Law Group and L.R. Ross & A.S. Bram LLP—on multiple grounds, including lack of personal knowledge, lack of foundation and improper secondary evidence of the contents of documents (Evid. Code, § 1521). The trial court sustained Carolina Casualty's objections, and the Trustee has not challenged those rulings on appeal. Accordingly, we do not disturb them. (See *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015 [120 Cal.Rptr.2d 281] [in absence of proper challenge to trial court's evidentiary rulings, appellate court will consider all affected evidence to have been excluded]; *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1309 [144 Cal.Rptr.3d 326] [same].)

In light of the evidentiary rulings, the evidence Ross Law Group dissolved in September 2006 is uncontradicted. However, even if Ross's belated attempt to retract his prior sworn statements were considered, the trial court was fully justified in disbelieving the new version of history he proffered[5] and in finding Ross Law Group had ceased to operate well before the DEC malpractice litigation and the instant coverage lawsuit. (See *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 908 [28 Cal.Rptr.3d 894] [appellate court starts with " 'the presumption that the record contains

---

[5] As discussed in *Ross I,* in his opposition to Carolina Casualty's summary judgment motion in this action Ross also disavowed his own earlier sworn statements regarding his role in DEC and its predecessors by insisting the declaration "had been prepared by an attorney who had recently been hired by DEC and who was not totally familiar with all the facts. According to Ross, the declaration, which he signed under penalty of perjury, contained a number of inaccuracies." (*Ross I, supra,* 184 Cal.App.4th at p. 202, fn. 2.)

evidence to sustain every finding of fact.' [Citation.] We review the evidence in the light most favorable to the respondent, resolve all evidentiary conflicts in favor of the prevailing party and indulge all reasonable inferences possible to uphold the [findings]"]; *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514–515 [46 Cal.Rptr.3d 408] [" 'It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact.' [Citation.] . . . [W]e do not evaluate the credibility of the witnesses or otherwise reweigh the evidence. [Citation.] Rather, 'we defer to the trier of fact on issues of credibility.' "].)

### 3. The Trial Court Properly Exercised Its Discretion to Amend the Judgment to Add Ross as a Judgment Debtor

Substantial evidence supports the court's finding "Ross, as an individual, actively participated in and controlled the litigation on behalf of [Ross Law Group]." Ross's involvement was pervasive: He attended the June 2008 mediation that resulted in the settlement of the DEC malpractice action and the agreement between Carolina Casualty and Ross Law Group to resolve the coverage dispute in this proceeding. Counsel for Ross Law Group could not commit to Ross Law Group's share of mediation costs without consulting Ross, and Ross's approval was necessary for substantive settlement negotiations. Ross provided the funds ($75,000), through the vehicle of The Leonard M. Ross Revocable Trust, used by Ross Law Group to fund its portion of the DEC settlement and agreed, on behalf of Ross Law Group, to pay Carolina Casualty $175,000 if the insurer prevailed on its coverage defenses. In addition, he submitted declarations in support of Ross Law Group's motion for summary judgment and its opposition to Carolina Casualty's motion in this coverage action and then appeared and presented oral argument, along with Ross Law Group's counsel, at the hearing on the cross-motions.

The Trustee, as he must, concedes Ross was extensively involved in the litigation, but insists Ross was simply acting as the authorized representative of Ross Law Group (or on behalf of himself or The Leonard M. Ross Revocable Trust in the postjudgment proceedings). Thus, he contends, it is inaccurate to conclude Ross personally, rather than Ross Law Group itself and its retained counsel, controlled the litigation. That distinction, as questionable as it might be under other circumstances, is totally illusory here, where Ross Law Group had dissolved and ceased operations well prior to the events at issue and where, in addition, Ross was at all material times the only equity partner in the purported limited liability partnership. (See Corp. Code, §§ 16101, subd. (9), 16202, subd. (a) [partnership, including registered limited liability partnership, defined as an "association of two or more persons to carry on as *coowners* a business for profit" (italics added)]; cf.

*Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 223–224 [129 Cal.Rptr.3d 428] ["[h]aving carefully studied the idea of a one-partner partnership in light of the Revised Uniform Partnership Act, we conclude that no such animal exists"].)[6]

■ Ross, however, did far more than actively direct the litigation: As the trial court found, he encouraged the lawsuit to proceed as a means of resolving the lawsuit between Carolina Casualty and Ross Law Group knowing his law firm was a dissolved, inactive entity with no funds. As was true in the closely analogous situation in *Carr, supra*, 23 Cal.App.4th 14, under these circumstances "the equities overwhelmingly favor affirmance" of the ruling adding Ross as a judgment debtor. (*Id.* at p. 23.)

In *Carr* the plaintiff had worked for Barnabey's Hotel starting in 1987 and, when she suffered employment discrimination, sued Barnabey's Hotel Corporation believing it to be the owner of the hotel and her employer. The defendant answered, conducted discovery and defended the case on its merits. However, during the punitive damages phase of the trial the defendant revealed it had ceased doing business in 1983 and had never owned the hotel, which was instead owned and operated by Peppercorn Ltd. No. 9, a limited partnership. The court concluded the plaintiff had. sued the right defendant, but under the wrong name, and Peppercorn was aware of the error and had taken advantage of it by conduct that "approached a fraud on the court." (*Carr, supra*, 23 Cal.App.4th at pp. 20–21.) The court also observed "Barnabey's and Peppercorn are not as separate and distinct as appellants would have it," noting that Peppercorn and Barnabey's were beneficially owned and controlled by the same family members, these family members referred to the entities interchangeably during trial, Peppercorn funded Barnabey's defense, and "the defense which was most obviously available to Barnabey's, that it was a stranger to the action, was never raised." (*Id.* at p. 21.) On these facts,

---

[6] As we discussed in *Ross I, supra*, 184 Cal.App.4th at page 198, Ross Law Group was "a two-person law firm whose sole equity partner [was] Leonard M. Ross." (See *id.* at p. 207 ["Ross Law Group [was] a law firm in which Ross was the sole equity partner . . . ."].) Ross himself stipulated for purposes of the cross-motions for summary judgment, "Ross Law Group was, during the time the [Carolina Casualty] Policy was in effect, a two-person firm comprised of one equity party with 34 years licensed in practice, Leonard M. Ross ('Ross'), and one non-equity partner with 13 years licensed in practice, Florence Cameron." In his opening brief in this court the Trustee describes nonequity partners as "generally paid a fixed salary (albeit much higher than associates), and they are often granted certain limited voting rights with respect to firm operations." The Trustee does not assert nonequity partners, in general, or Ms. Cameron, in particular, co-own partnership property or share in firm profits or losses—the defining attributes of a partnership. (See *Chambers v. Kay* (2002) 29 Cal.4th 142, 151 [126 Cal.Rptr.2d 536, 56 P.3d 645] ["[g]enerally, a partnership connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business"]; see also *id.* at p. 151, fn. 4 [nothing in the Corp. Code excepts lawyers from its terms, and no authority indicates these general principles pertaining to partnerships do not apply to lawyers].)

the court held, amending the judgment to add a new judgment debtor even in the absence of evidence establishing that Peppercorn was the alter ego of Barnabey's was permitted under the theory that " 'the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant' " (*ibid.*), and that it would be inequitable to permit the named defendant to conduct itself as though it was the proper defendant, and then seek to use the plaintiff's mistake to shield the entity that should have been named. (*Id.* at pp. 21–23.)

Ross's conduct, as described above, paralleled Peppercorn's and its owners', unfairly leading Carolina Casualty and the court to believe Ross Law Group alone was the proper party in the coverage dispute contemplated by the June 2008 settlement agreement. Similar to the timing in *Carr* where the true ownership of the hotel was disclosed only after liability had been established, it was not until judgment was entered that Ross Law Group revealed it was unable to honor the financial commitments it had made.

In sum, given the finding that Ross Law Group had dissolved and ceased to operate as a limited liability partnership in September 2006, as well as the trial court's additional findings regarding Ross's active participation and control of the litigation between Carolina Casualty and Ross Law Group and the interrelationship of Ross Law Group, Ross himself and The Leonard M. Ross Revocable Trust, the court's decision to amend the judgment to add Ross as a judgment debtor was well within its ample discretion under section 187.

4. *The Order Amending the Judgment to Add Ross as a Judgment Debtor Does Not Interfere with Statutory Protections for Partners in Limited Liability Partnerships*

■ Pursuant to Corporations Code section 16306, subdivision (c), a partner in a registered limited liability partnership is not liable for the debts, obligations or liabilities of the partnership "that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership, by reason of being a partner or acting in the conduct of the business or activities of the partnership."[7] The Trustee contends amending the judgment against Ross Law Group to add Ross as a judgment debtor was an improper "direct attack" on this statutory protection. However, according to the express language of subdivision (c), any protection for an individual partner exists only during the time the partnership is registered: "[T]he liability shield does not extend to liabilities incurred, created, or assumed

---

[7] Corporations Code section 16306, subdivisions (d), (e) and (f), create certain exceptions to subdivision (c)'s liability shield, none of which is applicable here.

after the partnership's status as a registered LLP has terminated." (Chediak et al., Advising California Partnerships (Cont.Ed.Bar 2012 supp.) Planning Limited Liability Partnerships, § 9.5, p. 507.)

As discussed, the trial court found, based on substantial evidence including the formal notice of change of status of the limited liability partnership filed with the California Secretary of State, Ross Law Group had dissolved and ceased to operate as a limited liability partnership in September 2006, nearly two years before Ross, purportedly on behalf of Ross Law Group, entered into the stipulation agreeing to pay Carolina Casualty $175,000 if Carolina Casualty prevailed in this coverage lawsuit. Whatever limits Corporations Code section 16306, subdivision (c), may otherwise place on the court's authority under section 187—an issue we need not address—under these circumstances its protection for partners in limited liability partnerships is in no way undermined by the order adding Ross as a judgment debtor.

### 5. *The Purported Denial of Discovery Does Not Warrant Reversal of the Amended Judgment*

The Trustee also contends the trial court improperly refused to permit discovery in connection with the motion to amend the judgment, which, he insists, effectively denied Ross his right to a fair hearing on the motion. In asserting Ross's due process rights were violated, the Trustee fails to disclose that Ross never actually filed or served any requests for postjudgment discovery and the court never made a ruling denying such discovery.

What, then, is the basis for this argument? In connection with a statement pursuant to Code of Civil Procedure section 170.3, subdivision (c), objecting to Judge Michelle Rosenblatt presiding at further hearings in the case, Ross submitted the declaration of David Levine, a paralegal for the L.M. Ross Professional Law Corporation, stating he had called the clerk in department 40 and requested a hearing date for a motion for limited discovery by Ross, The L.M. Ross Revocable Trust and L.M. Ross Professional Law Corporation to enable them to defend against the pending motion to amend the judgment. According to Levine, "The clerk for Judge Rosenblatt, Department 40, refused to schedule such a hearing, or allow me to file such a motion, in any way." Levine's declaration attached as an exhibit what he described as a true copy of the motion to conduct discovery that he wished to file.

In striking the statement of disqualification pursuant to Code of Civil Procedure section 170.4, subdivision (b), Judge Rosenblatt noted the objection to her continuing to hear the case was based in part on "a claim that on May 9, 2011, the Court's clerk refused to telephonically arrange a hearing date on a motion." Rejecting that contention, the court stated, "Nor are

alleged acts of the court's clerk grounds for disqualification. There has been no admissible evidence presented that in any way involves actions or inaction of the court, nor that even establishes inappropriate action of the clerk."[8] The Trustee omits any description of this irregular procedural history in his appellate briefs and does not challenge as improper the alleged refusal of the court to set a discovery motion for hearing based on a telephonic request. Accordingly, any contention of error has been forfeited. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [issue not raised on appeal deemed forfeited or waived]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Even if the Trustee had properly presented the discovery issue on appeal, we would reject it as a basis for reversing the order granting the motion to amend the judgment.[9] The copy of the motion for discovery attached to the Levine declaration identified three specific areas of discovery that were sought:[10] When did Carolina Casualty become aware that Ross Law Group had no assets; what did Carolina Casualty know about the relationship among Ross Law Group, Ross and The Leonard M. Ross Revocable Trust; and what was Carolina Casualty's understanding of L.M. Ross Professional Law Corporation's purported status as a successor-in-interest to Ross Law Group. It is not reasonably probable a different result would have been reached on Carolina Casualty's renewed motion to amend the judgment if these purported discovery requests had been permitted. (See Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect

---

[8] Judge Rosenblatt found Ross's claims of bias relating to the September 16, 2010 hearing on the original motion to amend the judgment were untimely and rejected the other grounds asserted as disclosing no legal grounds for disqualification on their face.

[9] For the purpose of this analysis we assume without deciding the Trustee is correct that the broad authority of the trial court under section 187 includes the right to order discovery in connection with a motion to amend the judgment to add a judgment debtor. (Cf. *Greenspan v. LADT LLC, supra,* 191 Cal.App.4th at p. 506 [motion to amend judgment to add judgment debtors filed by plaintiff after he had engaged in judgment debtor discovery].)

[10] In the Trustee's opening brief in this court, he appears to suggest (although the argument is far from clear) discovery should also have been permitted on the merits of the underlying coverage dispute. The applicability of exclusion F, the subject of our decision in *Ross I, supra,* 184 Cal.App.4th 196 or other coverage defenses was not before the court on Carolina Casualty's motion to amend the judgment.

had not occurred or existed"]; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163]; see also *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 51–52 [115 Cal.Rptr.2d 151] [prejudice will not be presumed; burden rests with party claiming error to demonstrate not only error, but also a resulting miscarriage of justice].)

First, Ross obviously did not need discovery from Carolina Casualty to determine the legal status or financial condition of Ross Law Group or to uncover the relationship between and among the law firm, Ross himself, The Leonard M. Ross Revocable Trust and L.M. Ross Professional Law Corporation. Nonetheless, in his briefs the Trustee disingenuously contends the absence of discovery somehow prevented Ross from introducing evidence that at the time of the June 2008 settlement Ross Law Group expected to recover funds from a lawsuit against Adam Bram (who was previously affiliated in some respect with Ross in the practice of law) that would be sufficient to satisfy any judgment obtained by Carolina Casualty. Bram filed a declaration in support of Ross's opposition to the original motion to amend the judgment (in Sept. 2010), and Ross filed his own declarations in opposition to both the original and amended motions. None of these declarations described this purported asset. No information from Carolina Casualty could have cured this critical evidentiary omission concerning what the Trustee now describes as the "key inquiry" in determining the postjudgment motions.

Second, because the court denied the motion to add the trust and L.M. Ross Professional Law Corporation as judgment debtors, denial of discovery relating to Carolina Casualty's knowledge of those entities could not have prejudiced Ross.

Finally, with respect to Carolina Casualty's awareness of the financial condition and legal status of Ross Law Group prior to entry of the original judgment, the denial of discovery (to the extent there was such a denial) did not prejudice Ross. The Trustee concedes in his opening brief Ross Law Group did not disclose this information to Carolina Casualty prior to entry of judgment, arguing it had no duty to do so. And the Trustee does not challenge in any way the accuracy of the statements in Wootton's declarations, filed in support of the renewed motion to amend the judgment, that Carolina Casualty believed Ross Law Group would honor all its financial commitments as set forth in the June 2008 settlement agreement. (The Trustee does contend Wootton's statements evidence a deliberate litigation strategy not to name Ross or The Leonard M. Ross Revocable Trust as defendants—an argument that goes to the merits of the trial court's decision, not its purported denial of discovery on this issue.) In short, the Trustee has failed to identify any

evidence that might have been revealed in discovery that could have produced a materially different outcome. There was no prejudicial error.

## DISPOSITION

The amended judgment is affirmed. Carolina Casualty is to recover its costs on appeal.

Woods, J., and Zelon, J., concurred.