Filed 3/30/21  Frattini v. First American Title Co. of Napa CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANDREA FRATTINI et al., <br>     Plaintiffs and Respondents, <br> v. <br> FIRST AMERICAN TITLE COMPANY OF NAPA, <br>     Defendant and Appellant. | A158995 <br><br> (Napa County <br> Super. Ct. No. 18CV000902) |

Defendant First American Title Company of Napa (First American) appeals from a judgment awarding overtime wages to plaintiffs Andrea Frattini, Carolyn Sherwood, and Leslie Tschida (the employees).  On appeal, First American's sole contention is that the trial court abused its discretion in calculating the amount of overtime wages awarded.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

First American is a title company, and it has three job classifications relevant to this appeal:  "escrow officer," "senior escrow officer," and "senior escrow officer/branch manager" (branch manager).  The employees each worked for First American for 20 or more years, and all three resigned in January 2018.  First American classified the employees' branch manager positions as exempt for purposes of paying overtime wages.  As a result,

1

Tschida never received overtime pay, because she joined the company in 2003 as a branch manager and remained in that position until she resigned. Sherwood stopped receiving overtime pay when she was promoted to be a branch manager in 2013. And Frattini stopped receiving overtime pay when she was promoted to be a branch manager in 2017.

While the employees worked as branch managers, they spent 95 percent or more of their time doing the same work performed by senior escrow clerks and 5 percent or less of their time on managerial duties. Still, the trial court found, and First American does not contest on appeal, that the employees' position of branch manager was wrongly classified as exempt and that the employees were improperly denied overtime wages.

The parties agree that, excluding any overtime compensation earned before becoming branch managers, the employees were paid more as branch managers than they were or would have been paid as escrow clerks or senior escrow clerks. The parties also agree that while the employees were branch managers they worked an average of 10 overtime hours per week.

The employees brought a complaint against First American alleging five causes of action: (1) failure to pay overtime under Labor Code[1] section 510; (2) unlawful business practice under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.); (3) failure to provide meal and rest breaks under section 512; (4) failure to provide accurate wage statements under section 226; and (5) failure to pay wages upon discharge under

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

section 201.  The trial court ruled in favor of the employees on their section 510 and UCL causes of action.[2]

In a lengthy statement of decision, the trial court explained how it calculated "restitution/damages."  Referring to section 200—which defines wages as "all amounts for labor performed"—and section 49.1.2 of the Division of Labor Standards Enforcement Manual—which indicates that an employee's "regular rate of pay" includes " 'all renumeration for employment paid to, or on behalf of the employee' "—the court first totaled the renumeration the employees received, including base pay and bonuses, while they were branch managers.  To arrive at an annual hourly rate of pay, the court then took the total amount of each employee's renumeration for the months of an applicable year, divided this amount by the number of weeks within that period, and further divided that figure by 40.  That rate of pay was then multiplied by one and a half times and applied to the number of overtime hours each employee was deemed to have worked in each applicable year.  The applicable years included about half of 2014 and all of 2015, 2016, and 2017.

The trial court's final award, which included overtime, wage-statement penalties, and interest, was $194,561.21 to Tschida, $176,899.23 to Sherwood, and $43,283.36 to Frattini.  In October 2019, the trial court entered a judgment in favor of the employees for the total amount of $414,743.80, and First American appealed.  The following month, the court awarded the employees their costs and attorney fees, and it entered an amended judgment to include the award.  First American did not appeal from

<hr>

[2] The trial court also ruled for the employees on their fourth cause of action and against the employees on their third and fifth causes of action. These three causes of action are not at issue in this appeal.

the amended judgment, and it does not challenge the award of costs and attorney fees.

## II.
### DISCUSSION

A. *The Notice of Appeal Was Timely Filed.*

We first consider and reject the employees' contention that we lack jurisdiction over this appeal because First American failed to appeal from the amended judgment entered in November 2019.

Where an appeal is taken from a judgment to challenge legal issues resolved by the judgment, an appellant is not required to appeal from a subsequent modified judgment entered for the purpose of awarding interest, costs, and attorney fees. (*Amwest Surety Ins. Co. v. Patriot Homes, Inc.* (2005) 135 Cal.App.4th 82, 84, fn. 1.) In addressing almost identical circumstances to the ones present here, *Amwest* explained, "The modified judgment added only prejudgment interest, costs, and attorney fees to the original judgment, and made no substantive changes to the earlier judgment which finally disposed of all legal issues between the parties. As such, [the appellant's] appeal properly is before us, because (1) the [original] judgment was a final judgment regarding the parties' legal dispute which the [later] modification did not materially change, and alternatively, (2) the appeal should ' "be treated as a premature but valid appeal from the judgment." ' " (*Ibid*.) We agree with *Amwest*'s analysis and approach, and we conclude that we have jurisdiction to consider First American's appeal.

B. *The Judgment Must Be Affirmed Because It Is Supported by an Independent Ground Not Challenged on Appeal.*

We find more persuasive the employees' argument that even if we were to accept First American's substantive appellate arguments, the judgment would nonetheless have to be affirmed as it was supported by an independent

4

basis that First American does not challenge. Specifically, the trial court did not calculate the award any differently under the UCL than it did under the Labor Code, and First American challenges the amount of the award only under the UCL. As a result, any challenge to the award under the Labor Code is forfeited, and we must affirm.[3]

Wrongfully withheld wages can be awarded under more than one theory of liability. One theory authorizes them to be awarded as "damages" under Civil Code section 3281 et sequitur. (*Olson v. Cory* (1983) 35 Cal.3d 390, 402.) Principles of equity ordinarily have no bearing on statutory claims to recover unpaid wages. (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492.) Another theory allows withheld wages to be awarded as a "restitutionary remedy authorized by [the UCL]." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177 (*Cortez*).) "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." (*Id.* at p. 173.) Under the UCL, a court may order restitution, but not damages. (*Ibid.*)

The trial court here ruled in favor of the employees on both their section 510 and UCL causes of action and entered its judgment after calculating both "damages" and "restitution." On appeal, however, First American challenges only the award of restitution under the UCL. Its specific arguments are set forth in three sections of its opening brief. In the first section, First American argues that the trial court "abused its discretion"

---

[3] In light of this determination, we need not decide the merits of First American's challenges to the restitution award under the UCL, including its argument that that the award was improper because substantial evidence did not support the trial court's finding that the employees "collectively generated millions of dollars for [First American] over the years."

in "weighing the equities on awarding [the employees] restitution under the UCL." In the second section, which focuses on the overtime pay awarded to Frattini, First American argues that the court's overtime award was inequitable because it was not based on compensation and bonuses that "First American was paying to a comparable, non-exempt Senior Escrow Officer at the time." And finally, in the third section, First American maintains that the "court's refusal to exercise its equitable power to offset the bonuses awarded" resulted in a "windfall" to the employees.

These arguments are equitable in nature, and as such they challenge the trial court's award of restitution under the UCL.[4] But the trial court plainly calculated its award of "restitution/damages" for purposes of *both* the section 510 and the UCL causes of action. Nowhere in its opening brief does First American address the applicable measure of damages for a violation of section 510, much less attempt to demonstrate how the court's calculation under that measure was contrary to applicable legal standards.[5] Thus, First American has forfeited any argument that the court wrongly determined damages for the section 510 cause of action. (See *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1196 [failure

---

[4] At one point, First American uses the word "damages," but it does so in arguing that the trial court's use of the employees' "actual compensation as the basis for overtime" was "simply not a balanced exercise of the court's discretion." No such discretion exists when determining the regular rate of pay for damages under the Labor Code.

[5] Among other things, First American does not challenge the number of overtime hours the employees were deemed to have worked or the multiplication of the regular hourly pay for those hours by a factor of one and a half. (See § 510, subd. (a) ["any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee"].)

to raise an issue or support it with reasoned argument and citation to the record forfeits claim of error].)

In its opening brief, First American states, "In *Cortez*, where the plaintiff employee similarly asserted Labor Code and UCL claims for the employer's failure to pay overtime wages, the Supreme Court decisively held that the 'broad equitable power' granted to courts under . . . the UCL *requires* 'consideration of the equities on both sides of a dispute.' " To the extent First American means to suggest that equitable factors must be considered in calculating a damages award under section 510 if there is an accompanying UCL claim, the suggestion is based on a far-too-expansive reading of *Cortez*. *Cortez* simply recognized a claim for unpaid wages under the UCL, and it "agree[d] that equitable considerations may enter into the court's disposition of a UCL action." (*Cortez*, *supra*, 23 Cal.4th at p. 179.) The Supreme Court did not, however, hold or even intimate that equitable considerations must be considered by a trial court in measuring damages for unpaid wages based on non-UCL claims.

In sum, because the award of damages for the section 510 cause of action was not challenged, it provides an independent basis supporting the judgment. Accordingly, we must affirm. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

C.    *The Employees Are Entitled to Appellate Attorney Fees and Costs.*

Finally, the employees seek their attorney fees and costs on appeal. As they point out, an employee who prevails in an action for unpaid overtime wages is entitled to recover costs and attorney fees, including any incurred on appeal. (§ 1194, subd. (a); *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499 [statute authorizing award of attorney fees in trial court includes appellate fees "unless the statute specifically provides otherwise"].) We decline,

7

however, to determine whether the lodestar enhancement of 1.33 the trial court applied to its award of attorney fees should also apply to our award of appellate attorney fees. Instead, we remand the matter for the court to calculate the amount of appellate attorney fees, including any appropriate lodestar enhancement.

### III.
### DISPOSITION

The judgment is affirmed, and the employees shall recover their costs and attorney fees on appeal. The matter is remanded for the trial court to determine the amount of the appellate attorney fees to which the employees are entitled.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Sanchez, J.

*Frattini v. First American Title Company of Napa* (A158995)

9