Filed 5/17/21  Westlake Village Marketplace v. West American Roofing CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WESTLAKE VILLAGE MARKETPLACE, LLC, | B306358 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC105475) |
| v. | |
| WEST AMERICAN ROOFING, INC., | |
| Defendant and Appellant; | |
| VICTOR ENRIGHT, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Richie Litigation, Darren M. Richie and Kathleen Gadalla for Real Party in Interest and Appellant.

Martin P. Eramo for Plaintiff and Respondent.

_____

Appellant Victor Enright is the president of the defendant, West American Roofing, Inc. Plaintiff Westlake Village Marketplace, LLC sued the defendant for performing substandard roofing repairs on plaintiff's building. After prevailing at trial, plaintiff moved to add Enright as an additional judgment debtor under the alter ego doctrine. The trial court granted the motion. Enright now appeals.

Enright argues the trial court's alter ego findings are not supported by substantial evidence, and the court erred in amending the judgment to add him as a defendant. Plaintiff moves to dismiss the appeal on the ground the notice of appeal only named the defendant corporation as an appellant. We conclude the notice of appeal should be liberally construed to include Enright as an appealing party as it was clear he intended to participate in the appeal and plaintiff was not prejudiced by the omission. We further conclude that substantial evidence supports the trial court's alter ego findings, and the court acted within its discretion in amending the judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, defendant corporation contracted with plaintiff to install a roof coating system. The contract required defendant corporation to use specified products made by National Coatings Corporation. Work was completed on the project within a month, and plaintiff paid the contract sum in full.

The following year, in mid-2015, plaintiff had the roof inspected due to continuous leaks. The investigation revealed that defendant corporation had not used National Coatings Corporation's products but had substituted cheaper materials without informing or reimbursing plaintiff. Negotiations

2

between the parties failed, and plaintiff filed this action in March 2017 for breach of contract and action on a contractor's bond.

In August 2018, after two days of trial, the court issued a statement of decision in plaintiff's favor finding it "was not contradicted that Plaintiff entered into an agreement for Defendant to repair a roof using particular materials"; it "was not contradicted that Defendant used different materials than what was specified in the agreement"; and "Plaintiff submitted unrebutted evidence that as a result of Defendant's failure to use the specified materials, it sustained damages in the amount of $59,000.00 to repair the roof."

In September 2018, the court entered judgment against defendant corporation for $59,000, and awarded costs and attorney fees to plaintiff as the prevailing party. After hearing plaintiff's motion for attorney fees, the court entered a first amended judgment awarding $38,805 in costs and fees in October 2018.

Over a year later, in November 2019, plaintiff moved to amend the judgment to add defendant corporation's president, Enright, as an alter-ego judgment debtor. In support, plaintiff filed the declaration of John Condon, the former vice-president of defendant corporation, in which he stated: defendant corporation did not conduct any "formal corporate meetings"; defendant corporation never issued stock although Enright had "promised" Condon "fifty percent (50%) of the stock in the company"; "Enright controlled virtually all aspects of the corporation, including, exercising direct control over the corporate bank accounts and the withdrawal of money from the accounts"; "Enright, on a regular basis, used company funds to purchase items for his personal use"; Enright commonly substituted "a

3

cheaper product and did not advise the customer"; and Enright "handled all aspects of the lawsuit" with plaintiff. Plaintiff also submitted the declaration of defendant corporation's former office manager who confirmed that Enright regularly used corporate funds to pay for personal expenses.

The defendant corporation and Enright jointly opposed the motion. They argued that Condon exercised primary control over the company from May 2017 through January 2018, and controlled key decisions in the litigation. Enright and defendant corporation further argued it would be inequitable to hold Enright liable because plaintiff had unreasonably delayed in adding him to the lawsuit, and he sold the defendant corporation before judgment was entered.

The trial court granted the motion, finding a unity of interest between Enright and defendant corporation based on Enright's complete control over the corporation, use of corporate funds to pay for personal expenses, and the company's failure to observe corporate formalities. The court further found that Enright had controlled the underlying litigation, and the equities tipped in favor of holding him liable for defendant corporation's debt in this case.

On April 17, 2020, the court entered the second amended judgment adding Enright as a judgment debtor. Two months later, on June 17, 2020, defendant corporation alone filed a notice of appeal of the second amended judgment that added Enright as a judgment debtor. Ten days later, Enright and defendant corporation jointly filed a notice designating the record on appeal.

## DISCUSSION

### 1. *The Notice of Appeal Was Timely as to Enright*

Although only defendant corporation filed a notice of appeal, it was Enright who filed an appellate brief as the purported appellant.  Plaintiff now moves to dismiss the appeal on the ground that Enright did not timely appeal.  Enright acknowledges that the notice of appeal was filed solely on behalf of defendant corporation but argues that the "e-filing site" did not provide an option for filing the appeal on his behalf since he was not a party to the underlying action.  Thus, his counsel "was forced to file on behalf of Enright under the guise of [defendant corporation]."

Under California Rules of Court (CRC), rule 8.100(a)(1), "[t]o appeal from a superior court judgment or an appealable order of a superior court, . . . an appellant must serve and file a notice of appeal in that superior court."  "The notice of appeal must be liberally construed.  The notice is sufficient if it identifies the particular judgment or order being appealed."  (CRC, rule 8.100(a)(2).)  The rule of liberal construction applies to "defects in the notice's designation of the parties to the appeal."  (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 885 (*K.J.*).)

Some "decisions have applied the liberal construction requirement to construe a notice to include a party who was omitted from the notice entirely."  (*K.J.*, *supra*, 8 Cal.5th at p. 886; see *Vibert v. Berger* (1966) 64 Cal.2d 65, 68–69 [even if the notice's defect was the result of the "appellant's ignorance" of the technical requirements of appellate procedure, he " 'should not be precluded from securing a review of what all concerned knew he was seeking to have reviewed' " (italics omitted)].)  "While the timely filing of a notice of appeal is an absolute jurisdictional

5

prerequisite [citation], technical accuracy in the contents of the notice is not." (*K.J.*, at pp. 882–883, fn. omitted & p. 885 [holding that "a reviewing court must construe a notice of appeal from a sanctions order to include an omitted attorney when it is reasonably clear that the attorney intended to join in the appeal, and the respondent was not misled or prejudiced by the omission"].)

Here, the notice of appeal clearly challenged the April 17, 2020 amended judgment that added Enright as a judgment debtor. No other order or ruling, and no other activity, occurred in the case on that date. Although the notice plainly erred in not designating Enright as the appellant, there is no evidence plaintiff was misled or prejudiced by the notice of appeal. Plaintiff was put on notice of the challenge to the alter ego determination, and within days of the filing of the notice of appeal, Enright's counsel filed documents indicating Enright was an appellant. (See *K.J., supra*, 8 Cal.5th at pp. 887-888 ["Whatever benefits might accrue from the formalistic approach . . . do not justify forfeiture of a party's right to appeal in cases where his or her intent to participate in the appeal is reasonably clear from the record, and the omission has caused no confusion or prejudice to the opposing party."].)

Under the rule of liberal construction and in line with the strong public policy favoring the hearing of appeals on their merits, we construe the notice of appeal to include Enright as an appealing party. (See *K.J.*, *supra*, 8 Cal.5th at p. 882 [CRC, rule 8.100 "is intended to 'implement the strong public policy favoring the hearing of appeals on the merits' "].) Accordingly, we deny plaintiff's motion to dismiss.

## 2.  The Trial Court Did Not Err in Adding Enright as a Judgment Debtor

### A.  Law and Standard of Review

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations," but a "corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation."  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538; see also *Aljabban v. Fontana Indoor Swap Meet, Inc.* (2020) 54 Cal.App.5th 482, 509; *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1159 [" '[W]here there is evidence that officers or directors have abused the corporate form, a plaintiff may proceed on a theory of alter ego liability.' [Citation.]"].)

The trial court has the authority, under Code of Civil Procedure section 187, "to amend a judgment to add an alter ego of an original judgment debtor, and thereby make the additional judgment debtor liable on the judgment.  [Citation.]  Amending a judgment to add an alter ego of an original judgment debtor ' "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." ' [Citation.]" (*Highland Springs Conference & Training Center. v. City of Banning* (2016) 244 Cal.App.4th 267, 280 (*Highland*).)

Our standard of review is part abuse of discretion and part substantial evidence.  (See *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1189 ["The trial court's decision to amend a judgment to add a judgment

7

debtor is reviewed for an abuse of discretion. [Citations.] Factual findings necessary to the court's decision are reviewed to determine whether they are supported by substantial evidence."].)

To prevail on a motion to amend the judgment to add an alter ego defendant, "the judgment creditor must show, by a preponderance of the evidence, that '(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone.' [Citation.] The decision to grant or deny the motion lies within the sound discretion of the trial court [citation] and will not be disturbed on appeal if there is a legal basis for the decision and substantial evidence supports it. [Citation.]" (*Highland*, *supra*, 244 Cal.App.4th at p. 280.)

B.      *Control of the Underlying Litigation*

Enright first argues that he "did not control the litigation during the initial suit." However, he does not address the evidence supporting the court's finding that he was in control, namely the declaration of defendant corporation's former vice-president, Condon. Condon stated that Enright "provided all declarations for the lawsuit," "made all decisions regarding the handling of the lawsuit," signed the verification to discovery responses, and was deposed pursuant to plaintiff's person most knowledgeable deposition notice. Although, Enright denied this was so and pointed the finger of control at Condon, the trial was entitled to believe otherwise. (See *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 198 ["Appellate

8

courts routinely apply the substantial evidence standard to findings of fact made by a trial court based on affidavits and declarations without any oral testimony."].)  Substantial evidence supports the trial court's finding that Enright controlled the litigation such that "he was virtually represented in the lawsuit and his addition as an additional judgment debtor would not be unfair."

C.      *Unity of Interest*

Enright next argues there was no "competent evidence" of a unity of interest between him and defendant corporation.  He contends that "corporate formalities were met since [defendant corporation] was incorporated in 1991 and the company successfully operated as a corporation for many years."  Enright again does not address plaintiff's evidence regarding unity of interest.  Instead, he cites only to his declaration in which he stated that he held "quarterly State of the Union addresses where" he and Condon "discussed our financials."

"In determining whether there is a sufficient unity of interest and ownership, the court considers many factors, including 'the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.  [Citation.]' [Citation.]  . . .  No single factor governs; courts must consider all of the circumstances of the case in determining whether it would be equitable to impose alter ego liability.  [Citation.]" (*Highland*, *supra*, 244 Cal.App.4th at pp. 280–281.)

Here, in finding a unity of interest, the trial court cited to Condon's declaration testimony that "corporate meetings were

9

never held nor minutes prepared." The court found that, although there was disputed evidence as to whether corporate meetings were held, there was no dispute that "there were no minutes of any regularly held corporate meetings." The court further cited to statements by Condon and the former office manager that Enright frequently used corporate funds to pay for personal expenses. Finally, the court relied on Enright's admission that he unilaterally "ended" Condon's involvement in the company and sold it as an "asset purchase" "without involving his so-called partner." Enright does not challenge these findings which the trial reasonably could have found demonstrated that defendant corporation did not observe corporate formalities, and that Enright commingled funds and exercised total control over corporate decisions. Based on this record, substantial evidence supports the finding of a unity of interest.

### D. An Equitable Result

Lastly, Enright argues that adding him as a debtor was inequitable because he sold the company before the judgment was entered. The trial court reasonably found that this argument weighed against Enright: "Enright sold the assets of [defendant corporation] in the summer of 2018 around the same time he directed that Plaintiff's claims should go to trial rather than settling, and then filed a statement of interest for [defendant corporation] in September 2018 indicating that he remained the Chief Executive Officer, Chief Financial Officer, sole Director, and agent for service of process for [defendant corporation]. This is consistent with Plaintiff's argument that Enright stripped [defendant corporation] of any assets it had to satisfy the judgment."

10

Enright also argues that plaintiff unreasonably delayed in seeking to add him as a defendant. He contends that plaintiff was on notice of his potential alter ego status when discovery revealed he was president of defendant corporation. However, as we have explained, status as a corporate officer by itself does not indicate the potential for alter ego liability. Enright's very argument was rejected in no uncertain terms in *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486. There the trial court denied plaintiff's motion to add an alter ego judgment debtor. In its ruling, the trial court stated that the alter ego status should have been litigated in an underlying arbitration. Our colleagues in Division One reversed. "An arbitration or civil suit is intended to determine liability and damages on specified causes of action, not to resolve hypothetical problems the plaintiff might face in collecting on a judgment. In this case, [the plaintiff] had no reason to name the [the alter ego] parties as defendants in the original suit. As a result, the discovery concerning alter ego issues, in the form of judgment debtor proceedings, occurred *after* the judgment was obtained. [Citations.] But under the trial court's reasoning, the plaintiff in every corporate contract case would be encouraged—regardless of the circumstances—to sue not only the corporation but also its owners and affiliated companies and then engage in *pretrial* discovery in an attempt to establish alter ego liability. This would promote a fishing expedition into alter ego evidence *before* the plaintiff obtained a favorable judgment, if at all. Thus, it may be prudent for a plaintiff to sue only the corporation. Should problems later arise in satisfying a judgment against the corporation, the plaintiff may resort to appropriate postjudgment proceedings [citations],

11

including [Code of Civil Procedure] section 187's procedure for adding judgment debtors." (*Id.* at p. 517.)

Nor did Enright demonstrate he was prejudiced by the timing of the alter ego motion. On the contrary, the trial court found that Enright "failed to identify a single document or witness to whom he has lost access because of the timing of this motion." (See *Highland*, *supra*, 244 Cal.App.4th at p. 286 [alter ego motions are subject to laches, but the defendant must demonstrate prejudice].)

Finally, we observe that Enright was solely responsible for the roofing damage in the underlying litigation as he admitted he made the decision to substitute cheaper materials, and failed to disclose that substitution to plaintiff. This record adequately supports the trial court's conclusion that it would be inequitable to treat the defendant corporation's breach of contract as a liability of the corporation alone.[1]

---

[1] In his opening brief, appellant argued that, if we were to affirm any part of the judgment, we should excise the attorney fees from the award. Appellant cited to no authority for this proposition. Counsel repeated the point at oral argument, again without authority but coupled with the contention that a reduction in the award would be equitable. We are aware of no authority that would allow us to modify the judgment based on the record before us; nor do we find that it would be equitable to do so.

## *DISPOSITION*

The second amended judgment is affirmed.  Respondent to recover its costs on appeal.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.

13