Filed 6/27/16  Nu Radiance v. Scott-Broadway CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| NU RADIANCE, | |
| Intervener and Appellant, | G051179 |
| v. | (Super. Ct. No. 05CC04985) |
| JEANNE L. SCOTT-BROADWAY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Law Office of Michael G. York and Michael G. York, for Intervener and Appellant.

The Yarnall Firm and Delores A. Yarnall; The Law office of Paul P. Young, Paul P. Young and Joseph Chora for Defendants and Respondents.

## INTRODUCTION

The main issue in this appeal is the addition of appellant, Nu Radiance, to a judgment entered in favor of respondents Richard and Jeanne Broadway. After obtaining a defense judgment in Orange County Superior Court over Sentry Medical Products, Inc. (Sentry), which was trying to collect a Wisconsin judgment from them, the Broadways moved to name Nu Radiance as an additional judgment debtor in their judgment for costs, on the grounds that Nu Radiance was Sentry's alter ego and/or successor.

The trial court granted the motion. It found that Sentry's owners, Edwin Novak (Novak) and his wife, Nancy Novak, had stripped Sentry of its assets and transferred them to Nu Radiance so that the Broadways could not collect their judgment from Sentry. Nu Radiance was, in effect, Sentry in all but name. Nu Radiance has appealed from this order.

We affirm. Substantial evidence supports the trial court's conclusion that Nu Radiance is Sentry's alter ego and a mere continuation of Sentry, having absorbed Sentry's business and taken over its assets to frustrate the Broadways' efforts to enforce their judgment.

The Broadways have made four motions in this court, two of which are slated for decision as part of this appeal.[1] They have moved to dismiss Nu Radiance's appeal as frivolous and for an award of sanctions on appeal. We deny the motion for sanctions. Although we believe Nu Radiance drew out this appeal process to delay the enforcement of the Broadways' judgment, respondents failed to alert this court to what was going on until it was too late to stop it. We cannot in fairness penalize Nu Radiance for taking advantage of the court's willingness to accommodate counsels' requests for extensions of time when the consequences of doing so in this case were not brought to

---

[1] The other two motions were summarily denied months ago.

2

our attention. Likewise, Nu Radiance's appeal is not totally without merit, though close, so the motion to dismiss it as frivolous must be denied as well.

## FACTS

Richard Broadway and two others owned American Dental Supply, LLC (ADS). Jeanne Broadway was the company's nonmember manager. In 2004, Sentry obtained a judgment against ADS in Wisconsin federal court for $1.7 million. Shortly afterward, ADS made an assignment for benefit of creditors. After liquidation, there was nothing left to pay Sentry.

The assignee for benefit of creditors, Development Specialists, Inc., sued Richard Broadway and other persons and entities in Orange County Superior Court in April 2005, alleging improper distributions and fraudulent transfers of ADS's assets. In November 2005, Sentry filed a complaint in intervention in the Orange County suit against both Broadways and others, seeking to collect the Wisconsin judgment against ADS from them. Shortly after Sentry intervened, Development Specialists dismissed the complaint. Sentry filed an amended complaint in intervention in April 2007.

The case was tried to the court in 2008. By this time, only Sentry's complaint in intervention was still at issue. Both Novak and his wife were present throughout the trial, which took place over a month between January and February 2008. The court announced its rulings in March and issued its statement of decision in May 2008. Judgment was entered a few days later.

The trial court found that the defendants, including the Broadways, had not fraudulently transferred any assets to defeat Sentry's judgment. It also found that Sentry was barred from recovery because of unclean hands.[2] Judgment was therefore entered in favor of all the defendants, and the court awarded costs to them. The Broadways filed

---

[2] The court found that Novak and Sentry's attorney had contacted Good Housekeeping magazine and accused ADS of putting cancer-causing chemicals in its dental products. As a result, Good Housekeeping withdrew its authorization to use the Good Housekeeping name in ADS's products' advertising, thereby "destroy[ing] any future business opportunity and the viability of ADS."

3

their memorandum of costs on May 30, and Sentry filed a motion to tax costs on June 19. Sentry filed a notice of appeal of the May judgment in July 2008, but abandoned the appeal a month later. Sentry's motion to tax costs was heard on July 18, and the amended judgment, including the amount of the costs, was filed on July 21, 2008.

Between the time the court announced its ruling in March and the time the statement of decision was issued and judgment entered in May 2008, Novak and his wife transferred all of Sentry's assets – accounts receivable, inventory, good will, and real estate – to Nu Radiance for a little over $1 million. Sentry then went out of business. For good. According to Novak, Sentry received $36,000 of the $1 million sale price in cash. The rest of the consideration was the assumption of loans from Sentry's mortgage bank and Novak's sons. The money from the Novak sons was used to finance the Sentry litigation against the Broadways. Novak is Sentry's sole stockholder; as of May 2008, Novak and his wife owned 26 percent of Nu Radiance's stock. Novak's children owned the rest. In January 2009, Novak and his wife gave the children their Nu Radiance stock. Novak continued to work for Nu Radiance; as its president, he signed the mortgage that Nu Radiance took out to pay off Sentry's debt to the bank. Nu Radiance operated out of the same building as Sentry and used the same phone and fax numbers. Nu Radiance sells the same products; Sentry's website now advertises Nu Radiance's products.[3]

The Broadways moved to add Nu Radiance to the judgment as a judgment debtor in their favor for costs. The trial court granted the motion on both alter ego and successor liability grounds, finding that Sentry and Nu Radiance were alter egos of each other and of Novak. It entered a second amended judgment, now including Nu Radiance, in the amount of $263,369. Nu Radiance has appealed from that judgment.

---

[3] Nu Radiance was incorporated in Wisconsin in 2001. It became delinquent in 2003 and again in 2012. It was restored to good standing on both occasions.

4

## I.     The Appeal

Code of Civil Procedure section 187 authorizes a trial court to amend a judgment to add judgment debtors.[4] (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1188.)  We review the court's decision to add a judgment debtor for abuse of discretion.  "'The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done.'  [Citations.]" (*Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 20.)

Nu Radiance has identified two grounds for reversing the trial court's decision to add it as a judgment debtor.  First, Nu Radiance could not be added under an alter ego theory because it did not control the litigation between Sentry and the Broadways.  Second, Nu Radiance could not be added under a successor liability theory because it did not have the same shareholders as Sentry.  We address each in turn.

### A.     Alter Ego

"In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.  [Citations.]  'Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.'

---

[4]     Code of Civil Procedure section 187 provides, "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

[Citations.] Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539 (*Sonora Diamond*).) Whether the factors of the alter ego doctrine have been established is a question of fact that we review for substantial evidence. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108 (*Toho-Tawa*).)

Usually a judgment creditor employs the alter ego theory to fasten liability on an individual who controls the debtor corporation, seeking to obtain satisfaction of the judgment from this person. In some cases, however, the target may be another corporation, rather than an individual. This is the "single enterprise" doctrine, a variant of alter ego. (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341 [doctrine prevents use of sham corporate entity].)

"[U]nder the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: '"In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both."' [Citation.]" (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250.)

Substantial evidence supports the trial court's conclusion that Nu Radiance and Sentry are a single enterprise. In fact, Sentry has ceased to exist as an enterprise at all; Nu Radiance has absorbed Sentry's corporate existence. As far as the evidence indicates, the only thing Sentry still owns is the Broadways' judgment against it. (Cf.

6

*Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 57 (*Mirabito*).) Clearly an inequitable result would occur if the separate existence of Nu Radiance and Sentry were upheld. (See *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 816; *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1034.)

Sentry's sole argument on appeal is that alter ego liability cannot be imposed because Nu Radiance did not control the Orange County litigation. Considerations of constitutional due process prohibit entering a judgment against persons or entities who have not had an opportunity to defend themselves in court. (See *Toho-Tawa, supra,* 217 Cal.App.4th at p. 1106; *Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 45-46.)

Nu Radiance itself did not participate in the litigation between Sentry and the Broadways. It was apparently uninvolved until May 2008, when it suddenly became the recipient of Sentry's largesse. The point of contact between the two is, of course, Novak.

The trial court found that Novak was the alter ego of both Sentry and Nu Radiance, a finding Nu Radiance did not challenge on appeal. Since Novak was the alter ego of both Nu Radiance and Sentry, his presence at trial satisfied the requirements of due process.[5] (See *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 509-510 [person in charge of single enterprise consisting of alter ego entities controlled litigation].) Novak attended every session of the trial, and presumably, in his capacity as president and sole owner of Sentry, he was the person whom the attorneys consulted when they needed direction from the client. Novak is also the president of Nu Radiance. Novak certainly had every incentive to litigate the case vigorously, and Nu Radiance has

---

[5] The Broadways did not seek to add Novak and his wife as judgment debtors because they are both in bankruptcy.

7

suggested nothing it could have presented to the court as a separate corporation that would have influenced the outcome. (See *Mirabito, supra,* 8 Cal.2d at p. 60.)

B.     Successor Liability

"The general rule is 'where one corporation sells or transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former unless (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for debts. [Citations.]' [Citation.]" (*McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753.) As the court stated in *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461, "[U]nder certain circumstances corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation."

Substantial evidence supported the trial court's conclusion that Nu Radiance was merely a continuation of Sentry and its inference that the purpose of the "sale" of Sentry's assets to Nu Radiance was to escape the Broadways' judgment. Nu Radiance took over Sentry's real estate, accounts receivable, mortgage, web site, offices, telephone and fax numbers, and loans to shareholders. It paid only $36,000 in cash of the $1 million sale price. Nu Radiance also assumed Sentry's obligations – except for the Broadways' judgment. This evidence reinforces the conclusion that Nu Radiance is Sentry's successor; it is paying off Sentry's obligations as Sentry would have had to do.

Nu Radiance argued that it cannot be Sentry's successor because it has different shareholders. Identity of shareholders is not a requirement for successor liability. This is not alter ego liability, which requires, at a minimum, a unity of interest

and ownership.  (See *Riddle v. Leuschner* (1959) 51 Cal.2d 574, 580; *Sonora Diamond, supra*, 83 Cal.App.4th at p. 538.)  Successor liability is a different theory entirely, based on the way the transaction between the two corporations was structured.  Substantial evidence supports the trial court's conclusion that the purpose of the transaction between Sentry and Nu Radiance was to render Sentry judgment-proof.

## II.      The Motions

The Broadways made four motions in our court.  These are:  a motion to reconsider our order vacating the dismissal of Nu Radiance's appeal; a motion to deny Nu Radiance's motion to reinstate the appeal after it had been dismissed or to require Nu Radiance to post a bond; a motion to dismiss Nu Radiance's appeal as frivolous; and a motion for sanctions.  The first two motions were denied on September 24, 2015.  We undertook to rule on the latter two motions – the motion to dismiss and the motion for sanctions – in connection with the appeal.

As we have elected to address the two issues Nu Radiance raised, we deny the motion to dismiss the appeal.  The remaining question is whether Nu Radiance should be sanctioned.  Code of Civil Procedure section 907 provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

As our Supreme Court has stated, "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it indisputably has no merit – when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions."

9

(*Ibid.*) The power to punish attorneys for prosecuting frivolous appeals "should be used most sparingly to deter only the most egregious conduct." (*Id.* at p. 651.)

The Supreme Court has defined a "frivolous" appeal as being one of two distinct types: one prosecuted for an improper motive (harassment or delay) and the other totally without merit. "'"While each of the above standards provides independent authority for a sanctions award, in practice the two standards usually are used together "with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." [Citations.]' [Citation.]" (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516.)

By addressing the issues in Nu Radiance's appeal, we have, in effect, ruled out the totally meritless appeal as a ground for sanctions. Admittedly the appellant's opening brief is bare-bones and unconvincing, but it is not *totally* without merit. That leaves the improper motive ground – specifically the Broadways' contention that the appeal was prosecuted to delay the effect of an adverse judgment.

Nu Radiance filed its notice of appeal on December 17, 2014. It filed the notice designating the record on appeal on December 26, 2014. This court notified Nu Radiance on February 10, 2015, that the opening brief and appellant's appendix were due March 23. The brief was not filed on time, and we notified appellant on March 26 that it had 15 days to file the opening brief, or the appeal could be dismissed. The brief was due April 10 (a Friday). On April 14, Nu Radiance filed a request for an extension of time, to May 10, to file the brief. The request was granted, extending the time to file to May 11. Nu Radiance then made a series of requests for extensions to file its brief and appendix, on May 11, June 11, and July 10. The extension requested on June 11 was granted with the notation that this was going to be the last extension; nevertheless, another "last" extension for seven days was granted on July 10.

This court received appellant's opening brief on July 20; the appendix did not accompany the brief. (See Cal. Rules of Court, rule 8.124(e)(2).) Accordingly, on

10

July 28, 2015, the appellant's brief was returned and the case was dismissed pursuant to California Rule of Court, rule 8.220(c). On August 13, Nu Radiance moved to vacate the dismissal. This motion was denied on August 19, on the grounds that the brief and the appendix had not been forthcoming and no explanation had been given for the delay between the time the brief was due, in March, and the defective filing in late July. Undeterred, Nu Radiance filed a motion for relief from default on August 24, only a few days before we lost jurisdiction over the case. The order of dismissal was vacated on August 25, and the opening brief and appendix were filed.

In the meantime, Nu Radiance had filed a request for a temporary restraining order in the Wisconsin circuit court, on December 19, 2014, two days after filing its notice of appeal in California. The Wisconsin temporary restraining order was granted on February 2, 2015. In essence, the restraining order prohibited the Broadways from executing the California judgment pending the resolution of this appeal; nothing in the Wisconsin order indicates that Nu Radiance was required to post a bond.

The Broadways filed a series of motions, among them the motions under consideration here, on September 4, and this court informed Nu Radiance that it could file opposition on or before September 24. Nu Radiance requested an extension of time to file the opposition on September 25 and filed its opposition on October 5. It also made a series of requests for extensions of time to file its reply brief after the Broadways filed their respondents' brief on October 16. The reply brief, which was due on November 5, (Cal. Rules of Court, rule 8.212 (a)(3)), was filed on December 8, 2015.

The benefit to Nu Radiance of this protracted appeal is palpable. For nearly a year and a half, the Broadways have been unable to execute on their judgment, without the protection afforded by a bond. Although interest on the judgment has been accruing at the legal rate (Code Civ. Proc., § 685.010), the delay has afforded Nu Radiance plenty of time to perform more disappearing acts with its assets.

In hindsight, the motive behind these requests for extensions of time and delayed filings is obvious. We are not clairvoyant, however, and we usually try to accommodate counsels' requests for extensions unless there is a good reason not to do so. The Broadways did not speak up about this abuse or inform us of the Wisconsin order of February 2015 until September 2015, after months of requests for extensions had gone by without protest. An objection in April or May of 2015, with a heads-up about the Wisconsin order, might well have halted this train. While we deplore Nu Radiance's tactics, under the circumstances we reluctantly conclude the motion for sanctions must be denied because all of counsel's actions were – essentially – approved by this court.

## DISPOSITION

The order adding Nu Radiance to the judgment is affirmed. Respondents' motions to dismiss and for sanctions are denied. Respondents are to recover their costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

12