Filed 6/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SANDRA CORRALES FAVILA, as Executor, etc., | B304841 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC379462) |
| v. | |
| HELENA PASQUARELLA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge. Affirmed.

Barnhill & Vaynerov, Maxim Vaynerov; Walton & Walton and L. Richard Walton for Defendant and Appellant.

Miller Barondess, Christopher D. Beatty and Bernadette M. Bolan for Plaintiff and Respondent.

————————————

The trial court granted the motion of Sandra Corrales Favila, as executor of the Estate of Richard Charles Corrales (Estate), to further amend the judgment entered against Raleigh Souther and Get Flipped, Inc. by adding Helena Pasquarella as a judgment debtor. Emphasizing that she had successfully moved for summary judgment and been dismissed as a defendant many years earlier and that the Estate had already obtained a judgment against her in a separate fraudulent conveyance action, Pasquarella contends on appeal that the court exceeded its equitable authority under Code of Civil Procedure section 187[1] by granting the motion. Pasquarella also contends the evidence was insufficient in any event to justify adding her as a judgment debtor. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Get Flipped Lawsuit*

As described in detail in this court's opinions resolving prior appeals,[2] Richard Corrales, a photographer and inventor, and Souther incorporated Motion Graphix, Inc. in 2000 to license and sell photographic and imaging technologies Corrales had developed or improved for the creation of animated lenticular images.[3] Corrales owned 51 percent of the company; Souther 49 percent.

---

[1]     Statutory references are to this code.

[2]     *Favila v. Souther* (Jan. 21, 2015, B253740) [nonpub. opn.]; *Favila v. Souther* (Oct. 23, 2012, B230264) [nonpub. opn.]; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189.

[3]     We explained in our 2012 opinion, "Popularized in the 1940s, lenticular imaging interlaces two photographs into a single image that, when covered with a prismatic lens, displays each photograph separately depending on the angle by which the

Corrales died in November 2005. In February 2007 Souther, purportedly acting on behalf of Motion Graphix, sold the company's assets to Get Flipped, a company created in 2006 and wholly owned by Souther (90 percent) and Pasquarella (10 percent), Souther's then-wife, for $5,000. Motion Graphix was dissolved by Souther in March 2007.

In October 2007 Favila, Corrales's sister, as executor of his estate, filed a complaint asserting causes of action for conversion, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing against Souther, Get Flipped and fictitiously named Doe defendants. The complaint alleged Corrales had still owned 51 percent of the shares of Motion Graphix when he died, those shares passed to the Estate, the Estate never approved the sale of Motion Graphix's assets to Get Flipped or Motion Graphix's dissolution, the fair market value of Motion Graphix's intellectual property was between $8 million and $12 million and Souther had engaged in wrongdoing by orchestrating the fraudulent and unauthorized sale of Motion Graphix's assets to Get Flipped. In addition to damages the complaint sought imposition of constructive and resulting trusts.

In April 2008 the Estate amended the complaint to name Pasquarella as an additional defendant. Pasquarella's motion for

image is viewed and creates the illusion of motion. As described in a 2002 press release, Motion Graphix offered a turnkey hardware and software system allowing users, such as theme parks, in a matter of seconds and for very low cost, to capture images from any source, add artwork and print animated lenticular souvenir cards or security identification badges that were impossible to duplicate or falsify." (*Favila v. Souther*, *supra*, B230264.)

3

summary judgment was granted, and she was dismissed from the lawsuit in January 2009. The Estate did not appeal that ruling.

At the conclusion of a lengthy bench trial ultimately held in the action, the court found in favor of the Estate on its claims for breach of contract, conversion, fraud and breach of fiduciary duty and awarded it $4,003,311.70 in damages against Souther and Get Flipped: $1,700,191 in compensatory damages, which included both the value of the Estate's interest in the wrongfully transferred assets of Motion Graphix and the Estate's share of the income generated by those assets from which it had been excluded; $2,125,238.70 in punitive damages; and $177,882 in prejudgment interest. The court also imposed both a constructive trust and resulting trust in favor of the Estate on all the Motion Graphix assets fraudulently transferred to Get Flipped including computer equipment, software code, trademarks, copyrights and license agreements.

On appeal we rejected most of Souther's challenges to the judgment but agreed the trial court had erroneously imposed a constructive/resulting trust on 100 percent of the assets improperly transferred to Get Flipped, rather than 51 percent. In addition, we held the Estate was not entitled to both damages to compensate it for the improper transfer of assets to Get Flipped and a constructive trust on those same assets: The Estate was required to elect its remedy. Accordingly, we remanded the matter for further proceedings to address those issues.

Following additional briefing and oral argument on remand, the trial court entered an amended judgment that reduced the compensatory damage award by $530,677, the valuation of the Estate's 51 percent interest in the assets

4

wrongfully transferred to Get Flipped, eliminated the resulting trust and imposed a constructive trust on all assets of Motion Graphix held by Get Flipped. There was no change in the punitive damage award. On Souther's appeal from the amended judgment we held it was proper for the trial court both to impose a constructive trust on the assets Souther had misappropriated from Motion Graphix and to award consequential damages for the Estate's lost income during the period Souther and Get Flipped held and used those assets. However, we held (and the Estate conceded) the trial court had again mistakenly imposed a constructive trust on 100 percent of the assets improperly transferred to Get Flipped. We modified the amended judgment to reflect the constructive trust imposed in favor of the Estate and against Souther and Get Flipped covered an undivided 51 percent (not 100 percent) of all the assets of Motion Graphix fraudulently transferred to Get Flipped and affirmed the amended judgment as modified.

2. *The Moofly Productions Lawsuit*

Following entry of the judgment in the Estate's lawsuit against Souther and Get Flipped, Souther and Pasquarella created Moofly Productions, LLC, doing business as 3D Cheeze. Pasquarella owned 90 percent of the new company; Souther owned the remaining 10 percent. In 2011 Get Flipped announced on social media it was rebranding as Moofly/3D Cheeze and transferred all of its assets to Moofly Productions. (See *Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1, 6.) In 2013 Moofly Productions sued Favila for intentional interference with prospective economic advantage, unfair competition and related claims based on actions taken by the Estate when attempting to collect its judgment in the Get Flipped litigation. The Estate

5

filed a cross-complaint alleging causes of action against Moofly Productions, Pasquarella and Souther (by then, Pasquarella's former husband) for fraudulent conveyance, conversion, unfair competition and copyright infringement. (*Ibid.*)

Following removal to federal court based on the federal copyright claim and remand to state court, the trial court granted the Estate's motion to dismiss Moofly Production's complaint as a discovery sanction. (*Moofly Productions, LLC v. Favila, supra,* 46 Cal.App.5th at p. 6.) In a bifurcated bench trial on the Estate's fraudulent conveyance claim, the court found that the transfer of assets from Get Flipped to Moofly Productions was a fraudulent conveyance designed to prevent the Estate from collecting on the judgment in the Get Flipped action. The court granted a mandatory injunction directing Moofly Productions, Pasquarella and Souther to transfer back to Get Flipped all the assets that had previously been transferred from Get Flipped to Moofly Productions. The court also ordered restitution of the profits earned from the fraudulently transferred property and issued a prohibitory injunction to prevent any further transfers of property. (*Id.* at p. 7.) The Estate voluntarily dismissed its remaining causes of action. (*Id.* at p. 7, fn. 3.) Our colleagues in Division One of this court affirmed the judgment on appeal. (*Id.* at p. 13.)[4]

_____

[4] In rejecting the argument the fraudulent conveyance action should have been tried to a jury, the court of appeal noted, at the hearing in the trial court to determine that question, "the Estate stipulated that it was not seeking monetary damages for fraudulent transfer, and the trial court did not award the Estate any damages." Accordingly, the court explained, "We need not and do not decide whether a jury trial would have been required

3. *The Motions To Further Amend the Get Flipped Judgment*

   a. *Addition of Moofly Productions as a judgment debtor*

On July 17, 2019, several months after entry of judgment in the Moofly Productions lawsuit and while the appeal was pending, the Estate moved to amend the judgment in the Get Flipped lawsuit to include Moofly Productions as a judgment debtor pursuant to section 187.[5]  The court granted the unopposed motion on August 12, 2019, explaining in its ruling that, under the "successor corporation" theory, "when a corporation transfers all of its assets to another corporation constituting its 'mere continuation,' the latter is also liable for the former's debts and liabilities.  [Citation.]  'A mere continuation' may be found where one corporation transfers all of its assets to another corporation in order to fraudulently escape liability for its debts.  [Citation.]  [¶]  Here, plaintiff has established by a preponderance of the evidence that Moofly is the successor of judgment debtor Get Flipped."

   b. *Addition of Pasquarella as a judgment debtor*

On December 11, 2019 the Estate moved pursuant to section 187 to further amend the judgment in the Get Flipped lawsuit by adding Pasquarella as a judgment debtor on the ground Pasquarella was the alter ego of judgment debtor Moofly Productions.  Hearing on the motion was set for January 6, 2020.

---

if the Estate had not waived this claim."  (*Moofly Productions, LLC v. Favila*, *supra*, 46 Cal.App.5th at p. 9, fn. 6.)

[5]     The judgment, originally entered on November 22, 2010, had been renewed on June 17, 2019.

7

The Estate supported its motion with a declaration from Bernadette Bolan, one of its attorneys, who explained, when the Estate attempted to enforce the August 12, 2019 amended judgment through bank levy, it discovered Pasquarella had set up bank accounts in the name of 3D Cheeze, Moofly Productions' registered fictitious business name, but tied the accounts to her personal social security number, rather than Moofly Productions' tax identification number. When the Estate attempted to levy on several accounts in 3D Cheeze's name, the bank informed the Estate's counsel it could not locate any responsive account because the social security or tax identification number(s) on the accounts had to match a named judgment debtor. Thus, the Estate argued, Moofly Productions' assets were, in fact, being held by Pasquarella as an individual.

The Estate also argued Pasquarella was the alter ego of Moofly Productions, contending Moofly Productions was inadequately capitalized because all its assets were held by Pasquarella; Pasquarella had commingled Moofly Productions' assets with her own; Pasquarella used Moofly Productions and 3D Cheeze as mere shell entities; and Moofly Productions had failed to observe corporate formalities and operated out of Pasquarella's home. In addition, because of the fraudulent transfer by Get Flipped, effected with the assistance of Pasquarella, the underlying judgment remained uncollected, which would lead to an inequitable result unless Pasquarella was found personally responsible based on her control of the assets that had flowed from Motion Graphix to Get Flipped to Moofly Productions to Pasquarella. These contentions were supported by various exhibits attached to Bolan's declaration.

8

On the morning of January 6, 2020 Pasquarella filed what she captioned a preliminary opposition to the motion to further amend the judgment and a request for a continuance of the hearing on the Estate's motion. Pasquarella argued the motion was barred by res judicata based on her successful motion for summary judgment and the ensuing final judgment. She also argued the motion was procedurally improper because it had not been served on her counsel (that is, counsel representing her in the Moofly Productions litigation).[6] Finally, although stating she had not had sufficient time since learning of the motion to marshal the relevant documents, Pasquarella disputed the Estate's assertion the Moofly Productions' bank records used her personal social security number.

The minute order from the January 6, 2020 hearing states the court received and considered the late-filed preliminary opposition and heard argument from counsel.[7] The court granted the motion and signed a further amended judgment the same day to include Pasquarella as a judgment debtor. As further amended the judgment states, "The Judgment against all judgment debtors consists of: [¶] (1) The constructive trust imposed in connection with the seventh cause of action; and [¶]

---

[6]     The proof of service attached as an exhibit to Pasquarella's preliminary opposition indicated the motion had been served by hand delivery on Souther, Get Flipped through its registered agent for service of process, Moofly Productions through its registered agent for service of process (Pasquarella at an address in Ojai, California), and "Judgment Debtor in Pro Per," at the Ojai address.

[7]     There is no reporter's transcript of the hearing.

(2) $7,502,656.00 as the amount entered when the judgment was renewed on June 17, 2019."

Pasquarella filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 187 provides, "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court of judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding is not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."  Pursuant to its authority under section 187, the trial court may amend a judgment to add a judgment debtor.  (*Triyar Hospitality Management, LLC v. WSI (II)-HWP, LLC* (2020) 57 Cal.App.5th 636, 641 (*Triyar*); *Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 815 (*Relentless Air Racing*); *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508.)

As this court explained in *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1188-1189 (*Carolina Casualty*), "As a general rule, a court may amend its judgment at any time so that the judgment will properly designate the real defendants. . . .  Judgments may be amended to add additional judgment debtors on the ground that a person or entity is the alter ego of the original judgment debtor . . . .  Amendment of a judgment to add an alter ego is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant.  [Citation.]  In addition, even

10

if all the formal elements necessary to establish alter ego liability are not present, an unnamed party may be included as a judgment debtor if the equities overwhelmingly favor the amendment and it is necessary to prevent an injustice." (Internal quotation marks omitted.) (See *Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 21-23 [although the evidence in the record was insufficient to establish that Peppercorn Ltd. No. 9 was the alter ego of defendant Barnabey's Hotel Corp., "the equities overwhelmingly favor affirmance"; "[a] reversal of that ruling would work an injustice, and we decline to make such an order"].)

The trial court's decision to amend a judgment to add a judgment debtor is reviewed for an abuse of discretion. (*Triyar, supra*, 57 Cal.App.5th at p. 640; *Relentless Air Racing, supra*, 222 Cal.App.4th at p. 815; see *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073 ["[i]n order to see that justice is done, great liberality is encouraged in the allowance of amendments brought pursuant to Code of Civil Procedure section 187"].) Factual findings necessary to the court's decision are reviewed to determine whether they are supported by substantial evidence. (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280; *Carolina Casualty, supra*, 212 Cal.App.4th at p. 1189.)

2. *Adding Pasquarella as a Judgment Debtor Is Neither Unnecessary Nor Unfair*

Although Pasquarella raises several specific legal challenges to the trial court's order adding her as a judgment debtor, her primary argument on appeal is that the order constituted an unjustified expansion of the trial court's concededly broad authority under section 187 that was both

11

unnecessary and unfair in light of her earlier successful motion for summary judgment on the merits in this case and the Estate's judgment against her in the Moofly Productions fraudulent conveyance lawsuit.[8]  In this regard, Pasquarella emphasizes she does not object to being added to the constructive trust portion of the Get Flipped judgment, only to the award of monetary damages.

The trial court's order amending the judgment to add Pasquarella as a judgment debtor notwithstanding her successful summary judgment motion is not unprecedented.  In *Danko v. O'Reilly* (2014) 232 Cal.App.4th 732 Michael Danko sued his former law firm, O'Reilly & Collins, and its controlling shareholder, Terry O'Reilly, for breach of contract and quantum meruit seeking unpaid compensation for his work while at the firm.  The trial court granted O'Reilly's motion for a directed verdict.  The jury then found in favor of Danko.  After a judgment for more than $2.4 million was entered against the law firm (*id.* at p. 737), Danko moved to amend the judgment to add O'Reilly as a judgment debtor.  In his motion Danko alleged O'Reilly had systematically drained the law firm of all its assets, thereby knowingly frustrating Danko's ability to collect the judgment. (*Id.* at p. 738.)  The trial court granted the motion and amended the judgment to add O'Reilly as a judgment debtor.  (*Id.* at p. 744.)  The court of appeal affirmed, explaining Danko's addition of O'Reilly as a judgment debtor did not increase the amount of the judgment and was unrelated to the liability determinations made at trial.  (*Id.* at 751.)  Instead, the trial court had found adding the judgment debtor was necessary to

---

[8]     In her opening brief Pasquarella describes her appeal as presenting "a unique question of first impression."

avoid sanctioning a fraud or promoting an injustice, a determination the court of appeal ruled was well within the court's discretion on the record before it. (*Id.* at p. 752.)

Similarly, in *Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1 (*Wells Fargo*) the bank sued Steven J. Weinberg and his law firm for repayment of $57,000 from a business line of credit. Only the law firm was found liable. The bank moved to amend the judgment to add Weinberg as a judgment debtor on an alter ego theory. The motion was granted; and the court of appeal affirmed, holding, "[T]he motion to add Weinberg to the judgment sought a remedy, not for breach of contract, but for Weinberg's exercise of control over the law corporation that deprived Wells Fargo of the ability to collect the judgment against the law corporation for breach of contract. These are separate and distinct wrongs." (*Id.* at p. 7.)

As was true as to the individual defendants in *Danko v. O'Reilly*, *supra*, 232 Cal.App.4th 732 and *Wells Fargo*, *supra*, 227 Cal.App.4th 1, in granting Pasquarella's summary judgment motion in 2009, the trial court determined she was not personally liable for the actions at issue in this lawsuit, a decision the Estate did not challenge on appeal. However, as in those cases, the theory that supports adding her as a judgment debtor is not her personal culpability for the breach of contract, conversion, fraud and breaches of fiduciary duty committed by her former husband—the issue resolved in her favor on summary judgment—but Pasquarella's postjudgment actions that have effectively made her the successor to Get Flipped. (See *Danko*, at p. 742 [the effect of a section 187 motion to add a judgment debtor on alter ego grounds is not to add a new defendant but to insert the correct name of the real defendant].) If that theory is

legally sound and factually supported, it is not unfair to hold her responsible for Get Flipped's obligations on the judgment.

Neither is the order adding Pasquarella as a judgment debtor unnecessary. As modified by our 2015 opinion the November 2010 judgment in this case had two primary components: a constructive trust covering 51 percent of the assets of Motion Graphix fraudulently transferred by Souther to Get Flipped and a money judgment against Souther and Get Flipped for the profits generated by those assets through the time of judgment. The judgment in the Moofly Productions litigation, in essence, simply followed the assets subject to the constructive trust from Get Flipped to Moofly Productions and from Moofly Productions to Pasquarella.

As discussed, in the fraudulent conveyance action the Estate was awarded restitution for profits earned from the assets fraudulently transferred from Get Flipped to Moofly Productions after the Get Flipped judgment was entered. Although the Estate waived any claim it might have for additional monetary damages suffered as a result of the fraudulent conveyance, neither the restitution awarded nor the damage claims waived included the profits Get Flipped had earned with the Motion Graphix assets, the basis for the damage award in the Get Flipped judgment. Contrary to Pasquarella's contention, because the Moofly Productions judgment does not obligate Pasquarella to pay that damage award, the Moofly Productions judgment did not make the Estate whole.[9]

---

[9] Because the portion of the Get Flipped judgment awarding damages and the restitution awarded in the Moofly Productions litigation cover different time periods, Pasquarella's concern about a potential double recovery by the Estate is illusory.

14

### 3. *The Order Is Not Barred by Claim or Issue Preclusion*

Pasquarella concedes it would have been proper for the Estate to move to add her as a judgment debtor in 2011 or 2012, shortly after Moofly Productions was formed. However, Pasquarella insists, by instead filing its cross-complaint for fraudulent conveyance in the Moofly Productions litigation and obtaining a judgment against her in that action, the Estate triggered, in some not quite defined combination, claim preclusion, issue preclusion and the bar of the one judgment rule. None of those contentions has merit.

"Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or those in privity with them] (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824, italics omitted (*DKN Holdings*); accord, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

Issue preclusion "prohibits the relitigation of issues argued and decided in a previous case even if the second suit raises a different cause of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings, supra,* 61 Cal.4th at p. 824; accord, *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."

(*DKN Holdings*, at p. 825.)  The doctrine differs from claim preclusion in that it operates as a conclusive determination of issues; it does not bar a cause of action.  (*Ibid*.)  Also, unlike claim preclusion, "issue preclusion can be invoked by one not a party to the first proceeding" (*id.* at p. 826) and "operates 'as a shield against one who was a party to the prior action to prevent' that party from relitigating an issue already settled in the previous case" (*id.* at p. 827).

The doctrine of claim preclusion does not bar the amendment of the Get Flipped judgment to add Pasquarella as a judgment debtor whether one looks to the Get Flipped lawsuit or the Moofly Productions litigation.  With respect to the Get Flipped action, the motion to add Pasquarella as a judgment debtor did not seek to relitigate the substantive causes of action resolved in her favor on summary judgment.  A motion to add a judgment debtor under equitable principles pursuant to section 187 does not involve the same cause of action (or the same "primary right") for purposes of claim preclusion as asserted on the merits in the underlying lawsuit.  (See *Danko v. O'Reilly*, *supra*, 232 Cal.App.4th at p. 250 ["the alter ego issue did not qualify as either ""the same cause of action"" or ""a different cause of action"" that would activate the protection of res judicata or collateral estoppel"]; *Wells Fargo*, *supra*, 227 Cal.App.4th at p. 7 ["[r]es judicata also does not operate because Weinberg's alter ego conduct was a separate and distinct harm from the law corporation's breach of contract"]; see generally *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 ["'a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right'"].)  And, obviously, the Estate could not have litigated the issue of Pasquarella's

postjudgment conduct prior to the entry of the judgment. (See *Greenspan v. LADT LLC*, *supra*, 191 Cal.App.4th at p. 514 ["'Res judicata is not a bar to claims that arise after the initial complaint is filed. . . . The general rule that a judgment is conclusive as to matters that *could have been litigated "does not apply to new rights acquired pending the action* which might have been, but which were not, required to be litigated"'"].)

As to the Moofly Productions litigation, the cross-complaint filed by the Estate did not seek to recover for wrongful actions that had occurred prior to the entry of judgment in the Get Flipped lawsuit. That is, the causes of action asserted against Pasquarella in the Moofly Productions lawsuit did not implicate any cause of action that had been litigated, or could have been litigated in the Get Flipped litigation prior to the entry of the judgment in November 2010. Nor did the cross-complaint seek a determination that Pasquarella was the alter ego of Moofly Productions, which, in any event, is not a "cause of action." (See *Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358-1359 ["[a]n alter ego defendant has no separate primary liability to the plaintiff"; "[a] claim against a defendant, based on an alter ego theory, is not itself a claim for substantive relief"].)

Pasquarella's argument the doctrine of issue preclusion somehow barred the motion to add her as a judgment debtor is equally unpersuasive. None of the facts actually determined in Pasquarella's favor in her successful summary judgment motion—that is, her lack of personal responsibility for the breach of contract, conversion, fraud or breach of fiduciary duty upon which the judgment in favor of the Estate was ultimately entered—was pertinent to the issues raised by the motion to add

17

her as a judgment debtor.  In contrast, her active participation in fraudulently transferring assets from Get Flipped to Moofly Productions to prevent the Estate from collecting the Get Flipped judgment was highly material to the motion to amend the judgment, as the trial court found; but those factual issues were resolved against her.  Issue preclusion supported granting the motion, not denying it.

4.  *The Record Adequately Supports the Trial Court's Order*

To prevail on a motion to add a judgment debtor, the judgment creditor generally must show, by a preponderance of the evidence, that "(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone."  (*Relentless Air Racing, supra,* 222 Cal.App.4th at pp. 815-816.)

As the Estate suggests, our ability to evaluate the adequacy of its evidentiary showing and the trial court's subsequent exercise of discretion in granting the motion is limited by the absence of a reporter's transcript of the hearing on the motion or a settled statement prepared pursuant to California Rules of Court, rule 8.137.  However, since it appears the court's decision rested on the declarations submitted on behalf of the Estate and Pasquarella, we reject the Estate's argument the issue of sufficiency of the evidence has been forfeited.

18

The evidence before the court was sufficient to support its decision.[10] The Estate presented evidence that Moofly Productions was inadequately capitalized since all of its assets were being controlled by Pasquarella and, as a corollary, that the entity and Pasquarella had commingled funds. Other factors considered in alter ego cases, an arguable lack of adherence to corporate formalities and business registration laws, also supported the court's determination. Most importantly, as established by the fraudulent conveyance judgment when considered together with the additional information concerning Pasquarella's control of the Moofly Productions' bank accounts, failing to formally recognize Pasquarella as a judgment debtor

---

[10] As discussed, the Estate personally served the motion to amend on Pasquarella, at the time no longer a party in the Get Flipped litigation, and not her counsel of record in the Moofly Productions litigation—a procedure that was entirely proper, although perhaps not a model of professional courtesy. (Cf. §§ 415.10 [requiring personal service of papers initiating a lawsuit], 684.020, subd. (a) [requiring postjudgment papers be served on postjudgment debtor, not debtor's counsel, absent a request on file with the court].) (Pasquarella was also served as the registered agent for judgment debtor Moofly Productions.) Based on her attorney's lack of time to prepare a more complete response to the motion, on the day of the hearing Pasquarella requested a continuance and an opportunity to file a supplemental opposition. The trial court denied the request. Although these circumstances were described in Pasquarella's opening brief, she did not argue the denial of her request for a continuance was error and a ground for reversal until her reply brief. The issue has been forfeited. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 554-555.)

19

would produce an inequitable result, effectively preventing the Estate from enforcing the judgment it had obtained against Get Flipped, precisely the corrupt goal Pasquarella sought to achieve.

Pasquarella's complaint there was something inappropriate about the Estate and the trial court relying on evidence of her wrongdoing that postdates the Get Flipped judgment and was at issue in the Moofly Productions litigation—even if not technically barred by claim or issue preclusion—misperceives the issue presented by the motion to amend. Pasquarella was not added as a judgment debtor as the alter ego of Get Flipped during the period at issue in the Get Flipped litigation, but as the alter ego of Moofly Productions, which was found, as a result of the Estate's unopposed motion, to be the postjudgment corporate successor to Get Flipped. Necessarily it was postjudgment actions that led to Moofly Productions and Pasquarella being added to the judgment.

The evidence that supports the first prong of the general test for adding an alter ego as a judgment debtor—control of the underlying litigation—is less compelling. Pasquarella was dismissed from the lawsuit more than a year before the judgment was entered against Souther and Get Flipped, while her active role in fraudulently transferring assets away from Get Flipped to evade enforcement of the judgment occurred only later. Yet throughout the litigation Pasquarella was one of the two owners of Get Flipped and its secretary and chief financial officer. Absent contrary evidence, it was not unreasonable for the trial court to find this aspect of the general test for adding a judgment debtor had been satisfied.

More importantly, the issue of control is not significant under the circumstances here. Pasquarella was added as a

judgment debtor as the alter ego of Moofly Productions, the postjudgment corporate successor to Get Flipped.  It was not necessary to find Moofly Productions had control of the underlying litigation to add it as a judgment debtor.  Nor is such a finding necessary as to its alter ego.  In any event, as we held in *Carolina Casualty*, *supra*, 212 Cal.App.4th at page 1189, a judgment debtor may be added if the equities overwhelmingly favor the amendment and it is necessary to prevent an injustice, even if all the formal elements generally necessary to establish alter ego liability are not present.  Under this more flexible standard, the trial court acted well within its discretion, based on the record before it, to grant the motion to amend the judgment.

5. *The Amendment Is Not Barred by Laches*

Finally, Pasquarella's assertion the motion was barred by laches because it was not filed until 10 years after entry of the judgment in the Get Flipped litigation lacks merit.  (*Lopez v. Escamilla* (2020) 48 Cal.App.5th 763, 766 [adding an alter ego defendant may be done at any time, whether during the first 10 years following entry of a money judgment or after the judgment has been renewed].)

## DISPOSITION

The order amending the judgment is affirmed.  The Estate is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.              FEUER, J.

21